THE STATE v. BERT BROYLES, Appellant.—295 S. W. 554.

Division Two, June 3, 1927.

1. **WITNESS: Indorsement When Called: Accomplice: Surprise.** It is not error to permit the name of a witness to be indorsed on the indictment at the time he is offered as a witness for the State; and the fact that he is an accomplice does not affect his competency, but only his credibility. When such indorsement is made, the defendant may move for a continuance on the ground of surprise, but without such motion it is not error to permit the witness to testify.

2. **INDICTMENT: Attempted Robbery: Involved and Inartificially Drawn.** An indictment alleging that defendant and three others "with force and arms in and upon one G. O. Jury" and two others "feloniously did make an assault and the said G. O. Jury" and said two others "in fear of injury

to their immediate persons by means of pistols loaded with powder and leaden balls, did feloniously put, did then and there feloniously and unlawfully by force and violence attempted upon the persons, G. O. Jury" and said two others, "attempt feloniously to rob G. O. Jury of one thousand dollars, all of the goods and property of the Bank of Barnhart, a corporation, from the said, G. O. Jury, the cashier of the Bank of Barnhart aforesaid, and the agent, servant and collector of the same, and who was then and there in possession and control of said money, then and there with force and violence attempted feloniously and violently to rob, steal, take and carry away, contrary to the form," etc., sufficiently charges the defendant with an attempt to rob by violence, and meets all the requirements of the statute (Sec. 3262, R. S. 1919), although involved and inartificially drawn, and not to be commended as a precedent.

3. ———: ———: **Bank: Cashier.** An indictment charging the defendant of an attempt to rob a bank may properly charge that the cashier was the owner and lawfully in the possession thereof and that defendant attempted to rob the cashier of his property, or that the bank was the owner of the money attempted to be taken.

4. ———: ———: **Wrong Name of Bank: Variance.** Variance between an indictment charging that defendant attempted to rob the Bank of Barnhart, and proof that the only bank in Barnhart was the Farm & Dairy Bank, is non-prejudicial in the absence of a finding by the trial court that it was material.

5. **EVIDENCE: Attempted Robbery: Competency of Acts of Co-conspirators.** Where by the evidence, both for the State and the defendant, the defendant and three others came to the town in an automobile with the purpose of robbing a bank, and that a part of their plan was that two of them should terrorize the persons found in the postoffice building, from which by a door in the partition wall between the two buildings the rear end of the bank could be entered, and that one or both of them should enter the bank through such door while the defendant and the other were engaging the attention of the cashier at his window, further evidence of the acts of the two in the postoffice while defendant and the other were engaged in conversation with the cashier and that when the cashier went to the door one of the two tried to shoot him, but failed because his pistol snapped and the cashier slammed the door, was admissible in the trial of defendant for the attempted robbery.

6. ———: ———: **Sufficient.** Proof that four persons had formed a conspiracy to rob a bank, and that a part of their plan was that two of them should terrorize persons in the adjoining postoffice building and that one or both of them should enter the bank by a rear door through the partition wall between the buildings while defendant and the other were engaging the attention of the cashier at his window, and further evidence that defendant and one of them came into the bank and engaged in conversation with the cashier, who hearing a noise in the post office went to the door, and when he opened it one of them snapped a pistol in his face; that he slammed the door, returned to his counter, picked up a revolver, and ordered defendant and the other to leave, and as they backed out of the bank he saw a pistol in defendant's hand; that the cashier followed them to the sidewalk, and the defendant and the cashier exchanged shots; that thereupon the other two came out of the post office, and shot at the cashier; that the four then ran, got in their automobile and drove rapidly away, firing at some of the citizens as they went, is sufficient to support a verdict finding defendant guilty of an attempt to rob the bank. The attempt of the man in the post office to shoot the cashier was an overt act committed in the execution of their concerted plan to rob the bank.

7. ———: ———: **Definition: Conspiracy: Overt Act.** The attempted shooting of the cashier of the bank in an effort to accomplish the concerted

plan of four conspirators to rob it is an overt act sufficient to establish the guilt of all of them in the attempted robbery. An attempt is an intent to do a particular criminal thing combined with an act which falls short of the thing attempted.

**8. EVIDENCE: Attempted Robbery: Overt Act: Intent: Conspiracy.** In the trial of a defendant charged with an attempted robbery the intent is material and must be alleged and proved; but no actual demand of money is necessary. Any conduct which, if it had been followed by taking property, would have been robbery, is evidence of an intent to rob. An admission by defendant that he and his three accomplices went to a bank for the purpose of robbing it, and that in the execution of the purpose one of the four committed an overt act, namely, an attempt to shoot the cashier, while defendant and another were present for the purpose of assisting in the robbery, is sufficient to establish an attempt to rob.

**9. INSTRUCTION: Falsus in Uno, etc.** An instruction on *falsus in uno, falsus in omnibus* is properly refused unless there is a basis for it in the evidence.

**10. ———: Circumstantial Evidence.** An instruction on circumstantial evidence is required where the State relies solely upon such evidence, but not otherwise.

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 93, p. 113, n. 16; Section 880, p. 485, n. 43; Section 1334, p. 668, n. 33; Section 1410, p. 689, n. 78; Section 1420, p. 694, n. 33; Section 2027, p. 797, n. 57; Section 2433, p. 1010, n. 12; Section 2442, p. 1017, n. 98; Section 2506, p. 1063, n. 85; 17 C. J., Section 3330, p. 55, n. 99; Section 3626, p. 287, n. 58; Section 3729, p. 359, n. 64. **Robbery,** 34 Cyc., p. 1813, n. 2, 5.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*North T. Gentry,* Attorney-General, and *L. Cunningham,* Assistant Attorney-General, for respondent.

(1) The indictment is in proper form and sufficient to charge the defendant with the commission of the crime of attempted robbery. State v. Newman, 289 S. W. 831. (2) The evidence shows that defendant entered the bank with intent to rob. The cashier testified that when he ordered the defendant out, the defendant had a pistol in each hand. The evidence further shows that the defendant and others were acting in concert to commit robberies, and defendant's accomplices were robbing the post office and one of them had pointed and snapped a pistol at the cashier during the time defendant was attempting to rob the bank. State v. Tate, 156 Mo. 119; 16 C. J. 112-115. The intent to use force may be inferred from the circumstances. State v. Smith, 80 Mo. 518. The intent may be gathered from the general conduct of the defendant. Kelley's Criminal Law & Procedure (3 Ed.) sec. 636, p. 560; State v. Williams, 11 Mo. App. 600; State v. Davidson, 172 Mo. App. 356. (3) It was not error for the court to permit McKinley to testify as a witness. The fact

that he was an accomplice affected his credibility but not his competency. State v. Hewett, 259 S. W. 773; State v. Glon, 253 S. W. 364; State v. Howerton, 228 S. W. 745; State v. Glenn, 262 S. W. 1030; State v. Howard, 231 S. W. 255; State v. Lassieur, 242 S. W. 900; Sec. 3889, R. S. 1919. (4) The giving of an instruction on *falsus in uno, falsus in omnibus*, is largely in the discretion of the trial court. State v. Gonder, 289 S. W. 645. (5) An instruction on circumstantial evidence where there is direct evidence as in this case is not required. State v. Crawford, 289 S. W. 961; State v. Hahn, 289 S. W. 845.

HIGBEE, C.—The defendant and two others were charged by indictment with having attempted to rob G. O. Jury, cashier of the Bank of Barnhart, in Jefferson County. The defendant was tried separately on May 14, 1925, found guilty of assault with intent to rob, as charged in the indictment, and his punishment assessed at imprisonment in the penitentiary for four years. From a sentence in accordance with the verdict of the jury, the defendant appealed. He has not favored us with a brief.

The indictment charges that Bert Broyles, Steve Gregory and William Stocker, on February 28, 1925, at the County of Jefferson, with force and arms in and upon one G. O. Jury, J. E. Jury and George C. Stein, feloniously did make an assault and the said G. O. Jury, J. E. Jury and George C. Stein in fear of injury to their immediate persons by means of pistols loaded with powder and leaden balls, did feloniously put, did then and there feloniously and unlawfully by force and violence attempted upon the persons, G. O. Jury, J. E. Jury and George C. Stein, attempt feloniously to rob G. O. Jury of one thousand dollars, all of the goods and property of the Bank of Barnhart, a corporation, etc., from the said G. O. Jury, the cashier of the Bank of Barnhart aforesaid, and the agent, servant and collector of the same, and who was then and there in possession and control of said money, then and there with force and violence attempted feloniously and violently to rob, steal, take and carry away, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.

The evidence for the prosecution is that on the morning of February 28, 1925, Bert Broyles, Clarence McKinley, William Stocker and Steve Gear, *alias* Gregory, met by appointment in St. Louis, and drove south through St. Louis County in a Marmon car with Broyles at the wheel, to the village of Barnhart in Jefferson County, with the purpose of robbing the bank at Barnhart. They had loaded revolvers and gave McKinley a suit case in which the money of the bank was to be put and carried away. The bank and the post office were in adjoining buildings, which were connected by a door near

the rear end of the partition wall. Broyles and McKinley went into the bank and Broyles talked with G. O. Jury, the cashier, who was alone inside the railing or counter of the bank and in charge thereof, about the prospect of getting work and lodging in the neighborhood. Stocker and Gear went into the post office and by displaying their guns, terrorized Stein, the postmaster, and twelve or fifteen others who were waiting for their mail. Hearing someone at the door in the rear of the bank, Jury, the cashier, went to and opened it to Gear, who snapped a pistol at him, which failed to fire. Jury slammed the door in Gear's face, returned to the front, picked up a revolver and ordered Broyles and McKinley out of the bank. As they backed out, the cashier saw a revolver in Broyles's hand. Jury followed Broyles and McKinley out to the sidewalk, where Broyles and Jury exchanged shots. At this time Stocker and Gear came out of the post office. They shot at Jury and the four bandits ran and got into the car. Stein came out and fired at Broyles, the driver of the car, who drove rapidly away, the bandits shooting at the citizens and some of the latter shooting at the car. Broyles was wounded in one of his hands, and one shot hit the top of his head. Several shots entered the bank building.

The defendant testified that he and Gear, McKinley and Stocker drove to Barnhart; that he and McKinley went into the bank and talked with the cashier about work; that the cashier went back to another room, came back with a gun and told them to beat it. Continuing, Broyles testified: "We got out; neither of us had a gun. Q. Now, when you were in the bank talking to Mr. Jury, why didn't you rob the bank? A. My heart failed me and I didn't have the desire to. Q. I will ask you whether or not while you were in the bank you abandoned your intention of robbing the bank before Mr. Jury came up there with a gun? A. I changed my mind before he came up there with a gun, yes, sir." Here the defendant was shown three guns by his counsel, one of which, an automatic, he said was his and that he had it with him.

I.   When the State offered Clarence McKinley as a witness it was objected that his name was not indorsed on the indictment. The court permitted this to be done and allowed him to testify over the defendant's objection. He testified that he was an accomplice in the attempt to rob the bank. There was no error in permitting the name of the witness to be indorsed on the indictment. [Sec. 3889, R. S. 1919.] The defendant might have moved for a continuance on **Witness.** the ground of surprise. [State v. Whitsett, 232 Mo. 511, 525, 134 S. W. 555; State v. Tate, 156 Mo. 119, 130, 56 S. W. 1099.] The fact that the witness was an accomplice affects his credibility, but not his competency. [State v. Newman, 289 S. W. 831, 833 (4); State v. Tate, supra.]

II.   While the indictment is somewhat involved and inartificially drawn and may not be commended as a precedent, still we think it sufficiently charges the defendant with an attempt to rob by violence and meets all the requirements of Section 3262, Revised Statutes 1919.   [State v. Affronti, 292 Mo. 53, 67, 238

**Indictment.**         S. W. 106; State v. Newman, 289 S. W. 831, 834, (7).]   It charged that by force and violence the defendants attempted feloniously to rob G. O. Jury of one thousand dollars, the goods and property of the Bank of Barnhart, a corporation, the cashier, etc., who was then and there in possession thereof.

The evidence sustained these averments.   It showed that G. O. Jury was cashier of the bank; that it was a corporation and that Jury, as cashier, was in possession and control thereof.   The indictment, as against the defendant, might properly have charged that Jury was the owner and lawfully in possession thereof and that the defendants attempted to rob Jury of his property.   Or it might have charged, as it did, that the bank was the owner of the money. [State v. Carroll and Gleason, 214 Mo. 392, 401, 113 S. W. 1051; 21 L. R. A. (N. S.) 311; State v. Affronti, 292 Mo. 53, 71, 238 S. W. 106; State v. Reich, 293 Mo. 415, 422, 239 S. W. 835.]

We have not overlooked the fact that the indictment charges an attempt to rob the cashier of the ''Bank of Barnhart,'' while G. O. Jury testified he was cashier of the ''Farm and Dairy Bank'' at Barnhart at the time of the attempted robbery.   So far as the record shows there was but one bank at Barnhart and all of the other witnesses, including those for the defendant, referred to it as the Bank of Barnhart.   This presents a case of variance between the charge and the proof, but it is provided by Section 3907, Revised Statutes 1919, that ''such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the defense of the defendant.''   The instructions for the State, as well as those asked by the defendant and refused, refer to the Bank of Barnhart, making no mention of the Farm and Dairy Bank.   The variance must be called to the attention of the trial court, otherwise it is waived. [State v. Ballard, 104 Mo. 634, 16 S. W. 525; State v. Small, 272 Mo. 507, 199 S. W. 127.]   Both by the statute and our decisions the variance is non-prejudicial in the absence of a finding by the trial court that it was material.·   [State v. Smith, 80 Mo. 516, 520, and State v. Smith, 252 S. W. 662, 665, III.]

III.   It is claimed in the motion for new trial that the court erred in overruling the defendant's demurrer at the close of all the evidence and that the court also erred in admitting evidence as to the

actions of Stocker and Gear in the post office, out of the presence and
hearing of the defendant. In view of the defendant's
evidence, as well as that for the State, there is no merit
in either of these contentions. The defendant and his accomplice
came to Barnhart with the purpose of robbing the bank. As is appar-
ent from the evidence, it was part of their plan that Stocker and
Gear should terrorize the persons found in the post office and then
one or both of them should enter the bank by the rear door while
Broyles and McKinley were engaging the attention of the cashier at
his window. They were acting in concert. When the cashier opened
the rear door of the bank, Stocker attempted to shoot him down,
but the snapping of his revolver and the prompt slamming of the
door defeated his murderous purpose. This was an overt act in the
attempted execution of their purpose to rob the bank. When the
cashier came to the front of the bank with a revolver and ordered
Broyles and McKinley out of the building, Broyles declared his heart
failed him and that he had already abandoned the attempt to rob
the bank. What were Broyles and McKinley there for? Broyles had
an automatic revolver in his possession while he and McKinley en-
gaged the cashier in conversation, awaiting Stocker's entrance at the
rear door of the bank. Stocker's act, in abortively attempting to
kill the cashier, was a part of the common purpose and plan to rob
the bank.

It appears to be difficult to frame a satisfactory definition of what
constitutes an attempt to commit a crime. Webster's New Inter-
national Dictionary has this definition: "Attempt to commit a
crime, Law, such an intentional preparatory act as will apparently
result, if not extrinsically hindered, in a crime which it was intended
to effect."

In State v. Smith, 80 Mo. 518, Judge SHERWOOD said: "An as-
sault with intent may exist without the actual attempt. [Regina v.
Dungey, 4 F. & F. 102, and note.] There need not be a direct at-
tempt at violence, but indirect preparations toward it, will, in cer-
tain circumstances, constitute an assault. [Citing authorities.] Thus
it has been held that where the prisoner decoyed a female child under
ten years of age into a building, and was detected within a few feet
of her in-a state of indecent exposure, although he had not touched
her, he was properly convicted of assault with intent to commit a
rape. [Hays v. People, 1 Hill, 351.] The intent to use force may be
inferred from the circumstances."

In State v. Davidson, 172 Mo. App. 356, 363, 157 S. W. 890,
Judge TRIMBLE said: "Black's Law Dictionary, p. 103, defines an
attempt in criminal law to be 'an effort or endeavor to accomplish a
crime, amounting to more than a mere preparation or planning for
it, and which, if not prevented, would have resulted in the full con-

summation of the act attempted but which, in fact, does not bring to pass the party's ultimate design.' 1 Bishop on Criminal Law, sec. 728, says it is an intent to do a particular .criminal thing combined with an act which falls short of the thing intended.''

''In order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime, but which falls short of the contemplated crime, the difference between attempt and commission being that the act or step fails to produce the result intended.'' [16 C. J. 113, sec. 93.  See also State v. Tate, supra.]

In Kelley's Crim. Law, 560, it is said:

''The intent to rob is material and must be alleged and proved. But no actual demand of money is necessary; the intent may be gathered from the general conduct of the defendant—menaces, threats, violence, the time and place of the assault,. and in short any conduct which, if it had been followed by taking property, would have been robbery, will be evidence of an intent to rob.''

Here we have an admission of the defendant that he and his accomplices went to the bank for the purpose of robbing it; in the execution of that purpose Stocker, one of the accomplices, committed an overt act, attempting to shoot G. O. Jury, the cashier, while Broyles and McKinley were present to assist in the robbery.  The court properly admitted evidence of the actions of Gear and Stocker in the post office as part of the *res gestae* and properly overruled the demurrer to the evidence at the close of the case.

The court instructed the jury upon all questions of law arising in the case necessary for their information in giving their verdict, including the subjects of good character, the credibility of the witnesses, the presumption of innocence and reasonable doubt.  Two of the instructions given for the State read as follows:

''B.  The court further instructs the jury that unless you believe from the evidence beyond a reasonable doubt that the defendant, Bert Broyles, at the town of Barnhart, County of Jefferson, State of Missouri, did feloniously make an assault upon G. O. Jury or J. E. Jury or George C. Stein and did then and there feloniously intend by means of said assault to take from the persons or presence of said G. O. Jury some portion of his property or property in his care and custody, belonging to the Bank of Barnhart, by putting him in fear of immediate injury to his person, and unless you believe that in said attempted robbery defendant committed some act towards the accomplishment thereof, or if you have a reasonable doubt thereto, you will acquit the defendant.

''C.  You are instructed that even though you may believe that defendant Bert Broyles came to Barnhart and entered the Bank of Barnhart with the intent to rob the said bank yet if you further be-

lieve that the said Bert Broyles for any reason voluntarily abandoned the intention to rob said bank and made no demand for money and committed no assault in said bank, or if you have a reasonable doubt as to whether he did so or not, you should acquit him of this charge."

These instructions were favorable to the defendant.

The court properly refused all of the defendant's instructions. One of these was an instruction on *falsus in uno, falsus in omnibus.* An instruction authorizing the jury to disregard the testimony of a witness on this ground should not be given unless there is a basis for it in the evidence. [State v. Palmer, 88 Mo. 568, 572; Lloyd v. Meservey, 129 Mo. App. 636, 108 S. W. 595.] The evidence did not warrant the court in giving this instruction.

The defendant was not entitled to an instruction on circumstantial evidence. Such an instruction is required where the State relies solely on circumstantial evidence. In this case, however, the evidence for this State was direct. The jury might well have found the defendant guilty on his own testimony. [State v. Crawford, 292 S. W. 961.] So far as the instructions asked by defendant announced correct principles of law they were covered by those given for the State. There were no errors in the admission or exclusion of evidence. The motions for new trial and in arrest of judgment were properly overruled. The judgment is accordingly affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.